UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JAY W. TOLMAN,                          )    No. SACV 14-663 FFM
                                        )
            Plaintiff,                   )    MEMORANDUM DECISION AND
                                        )    ORDER
      v.                                 )
                                        )
CAROLYN W. COLVIN, Acting               )
Commissioner of Social Security,        )
                                        )
            Defendant.                   )
_____)

      Plaintiff brings this action seeking to overturn the decision of the Commissioner
of the Social Security Administration denying his application for a period of disability
and disability insurance benefits.  The parties consented, pursuant to 28 U.S.C. §
636(c), to the jurisdiction of the undersigned United States Magistrate Judge.  Pursuant
to the May 2, 2014 Case Management Order, on December 29, 2014, the parties filed a
Joint Stipulation ("JS") detailing each party's arguments and authorities.  The Court has
reviewed the Joint Stipulation and the administrative record ("AR"), filed by defendant
on October 30, 2014.  For the reasons stated below, the decision of the Commissioner is
affirmed.

/ / /

/ / /

/ / /

/ / /

## PROCEDURAL HISTORY

Plaintiff applied for a period of disability and disability insurance benefits on July 25, 2011, alleging a disability onset date of June 9, 2011.  (AR 106-08.)  Plaintiff's claim was denied initially and on reconsideration.  (AR 52-56, 58-63.)  Plaintiff requested a hearing before an administrative law judge ("ALJ").  (AR 64.)  ALJ John Kays held a hearing on October 24, 2012.  (AR 28-46.)  Plaintiff appeared with counsel and testified at the hearing.  (*Id.*)  On December 13, 2012, the ALJ issued a decision denying benefits.  (AR 10-27.)  Plaintiff sought review of the decision before the Social Security Administration Appeals Council.  (AR 8-9.)  The Council denied the request for review on February 27, 2014.  (AR 1-7.)

Plaintiff filed the complaint herein on April 28, 2014.

## ISSUES

Plaintiff raises the following issues:

1.    Whether the ALJ erred in finding plaintiff's depression nonsevere and failed to properly weigh the relevant opinions and evidence.

2.    Whether substantial evidence supports the ALJ's finding that plaintiff's testimony was not credible.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied.  *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but less than a preponderance.  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402

U.S. at 401.  This Court must review the record as a whole and consider adverse as well as supporting evidence.  *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld.  *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

## DISCUSSION

1.   Issue One.

    A.   Background.

        i.   *Plaintiff's Psychiatric Treatment History.*

Prior to the June 9, 2011 alleged onset date, plaintiff was diagnosed with recurrent major depression, which he treated with a combination of medications.  (*See*, *e.g.*, AR 351, 357, 363, 368, 374, 380, 386.)  In May 2010, he told his psychiatrist, David Chandler, M.D., that he had a 15- to 20- year-history of depression.  (AR 386.) He had been spiraling downward since a breakup and wanted a medication change. (*Id.*)  By July 2010, he reported feeling much better with the addition of Zoloft to his medication regimen.  (AR 380.)  Plaintiff switched to venlafaxine (Effexor) *circa* January 2011 and reported in subsequent sessions that it helped with his irritability.[1] (AR 351, 357, 363.)

On July 21, 2011, plaintiff reported that he had been fired for being overly aggressive and verbally abusive.  (AR 344.)  He was living on savings and dating a woman, which was going okay.  He wanted a medication change.  (*Id.*)  Dr. Chandler recommended individual outpatient therapy ("IOP"), but plaintiff stated that he wanted to wait for the medication change.  (AR 346.)  In August 2011, plaintiff reported that

---

[1] Of note, plaintiff reported to a non-psychiatric treatment provider that he drank six to eight shots of vodka every evening because of work stress.  (AR 216.)  In July 2011, plaintiff reported that he exercised 200 minutes per week at a moderate to strenuous exercise level.  (AR 263.)

the medication change had not gone well and he had returned to Effexor.  (AR 338.)  He was feeling depressed, anxious, and too unwell to go to work.  However, his relationship was going well.  (*Id.*)

Plaintiff did not begin IOP until September 1, 2011.  Between that date and December 7, 2011, he attended seven IOP sessions and four anger management classes.  (*See* AR 746, 757, 766, 795, 825, 835, 841, 867, 880, 884-85, 913.)  He reported in his first IOP session that his mood had been spiraling down since his job loss.  (AR 746.)  In an October 2011 session, he reported a history of difficulty controlling his alcohol intake, culminating in a DUI in January 2011.  He cut down his drinking two months ago and was now drinking two glasses of wine two nights per week.  (AR 835-36, 841.)  Plaintiff further reported that he saw his girlfriend a few nights a week and was close to his two children.  (AR 836.)  He discussed wanting a career change and long-term disability.  (*Id.*)  In a November 2011 IOP session, plaintiff again stated that he wanted long-term disability.  He did not want to work because he wanted to find a field in which he was passionate.  (AR 885.)  He was working on increasing his social network through finding interest groups and volunteer work.  (*Id.*)

In September and November 2011, plaintiff reported to Dr. Chandler that he was benefitting from therapy and was feeling less depressed and hopeless, although he was anxious regarding his lack of work.  (AR 332, 898.)  In February 2012, plaintiff reported to Dr. Chandler that he was feeling very good.  He was exercising five days a week and was in very good shape.  (AR 924.)  Dr. Chandler concluded that plaintiff's depression was in partial remission.  (*Id.*)  In May and June 2012, after plaintiff's girlfriend broke up with him, plaintiff reported feeling panicked, anxious, and unable to control his emotions.  (AR 979-80, 994.)  He reported that it took about three vodka drinks to calm him down.  (AR 979.)  He again wanted to change his treatment regimen.  (*Id.*)  Plaintiff's treatment providers diagnosed him with generalized anxiety disorder, but not depression.  (AR 979, 994.)

///

On July 9 and again on July 10, 2012, plaintiff sought emergency treatment for lower back pain, odd behavior, and hallucinations. (AR 1032-72.) Plaintiff's son reported to treatment providers that plaintiff was being reckless with alcohol and pain medication. (AR 1067, 1070.) Plaintiff attributed his hallucinations to his ingestion of Norco.[2] (AR 1071-72.)

ii. *The Examining Physician's Opinion.*

On October 19, 2011, plaintiff underwent a consultative examination by Gene Berg, Ph.D. (AR 1085-96.) Plaintiff appeared depressed and distracted. He complained that he was forgetful and had low frustration tolerance. (AR 1085-86.) He reported being terminated from his last job because of anger problems. He had been terminated from other jobs because of similar issues. (*Id.*) Plaintiff was able to identify the United States President, the state governor, and a recent news item. (AR 1086.) His thinking was linear and he was oriented to time, place, and present situation. (*Id.*) He was able to do serial threes and serial sevens and remembered two out of three items "after a short period." (*Id.*)

Dr. Berg diagnosed plaintiff with major depressive disorder and assigned him a GAF score of 50, which indicates serious symptoms or impairment in functioning.[3] (AR 1087.) Dr. Berg opined that plaintiff "would not be able to work a full-time job in the next year" and had a fair to guarded prognosis. (AR 1087-88.) In pertinent part, Dr. Berg opined that plaintiff had moderate or higher limitations in areas of functioning relating to understanding and memory, sustained concentration, social functioning, and adaptation. (AR 1093-94.)

---

[2] Plaintiff had a similar emergency visit in September 2011 after ingesting Ambien, Norco, and morphine. (AR 549-50.) Upon discharge, he was instructed on noncompliance. (AR 556.)

[3] *See* American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u>, 34 (4th ed., text rev., 2000).

1

               *iii.*     *The Nonexamining Physicians' Opinions.*

2

        On October 10, 2011, Burnard Pearce, M.D., a state agency (nonexamining)

3 physician, completed a Psychiatric Review Technique form in plaintiff's case. (AR

4 392-405.) Dr. Pearce opined, in pertinent part, that plaintiff had mild limitations in

5 performing activities of daily living ("ADLs"); moderate limitations in social

6 functioning; no limitations in concentration, persistence, or pace; and no episodes of

7 decompensation of extended duration. (AR 402.) A state agency psychologist affirmed

8 Dr. Pearce's assessment. (AR 615-16.)

9

        At the hearing, Joseph Malancharuvil, M.D., the nonexamining medical expert,

10 opined that plaintiff had major depressive disorder, in partial remission, that was mainly

11 a psychological reaction to plaintiff's chronic pain. (AR 31-32.) He further opined, in

12 pertinent part, that plaintiff had mild limitations in ADLs; mild limitations in social

13 functioning; mild to moderate limitations in concentration, persistence, or pace; and no

14 episodes of decompensation. (AR 32.) In a work setting, plaintiff would have no

15 limitations. (*Id.*) In addition, plaintiff retained the capacity for moderately complex

16 tasks. (*Id.*)

17

        Dr. Malancharuvil further testified that plaintiff's psychological impairment was

18 "technically" temporary and non-severe, but viewed "liberally" could be considered

19 severe. (AR 32-33.) He stated that aggression was a behavior, not a mental illness, and

20 plaintiff's problems with aggression did not mean that plaintiff had a mental illness.

21 (AR 35-36.)

22

               *iv.*     *The ALJ's Decision.*

23

        In his decision, the ALJ found that plaintiff's depression did not cause more than

24 minimal limitations in plaintiff's ability to perform basic mental work activities.

25 Therefore, the impairment was nonsevere. (AR 16.) Plaintiff contends that the ALJ

26 erred in making this finding and in granting the greatest weight to Dr. Malancharuvil's

27 opinion. (JS 3-9.) The Court disagrees.

28 / / /

B.    Discussion.

    i.    Standard for Discussing the ALJ's Assessment of the Physicians'
          Opinions.

    In evaluating physicians' opinions, Social Security case law and regulations distinguish among three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither treat nor examine the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *limited on other grounds*, *Saelee v. Chater*, 94 F.3d 520, 523 (9th Cir. 1996); 20 C.F.R. § 404.1527. As a general rule, more weight should be given to the opinion of a treating physician than the opinions of nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); 20 C.F.R. § 404.1527(c)(2). In turn, more weight should be given to the opinion of an examining physician than the opinion of a nonexamining physician. *Lester*, 81 F.3d at 830; *see* 20 C.F.R. § 404.1527(c)(1). If a physician's opinion is contradicted, the ALJ may reject it in favor of a lower-tier physician's opinion if the ALJ provides specific, legitimate reasons, supported by substantial evidence, for doing so. *Lester*, 81 F.3d at 830-31.

    ii.    Standard for Discussing the Severity of a Mental Impairment.

    A "severe" impairment, or combination of impairments, is defined as one that "significantly" limits the claimant's physical or mental ability to do "basic work activities," defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1520(b)-(c). In order to determine an alleged mental impairment's severity, Social Security adjudicators utilize the so-called "psychiatric review technique." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011). Under the technique, adjudicators assess a claimant's mental restrictions in four broad functional areas: ADLs; social functioning; concentration, persistence, or pace; and episodes of

/ / /

/ / /

7

1    decompensation.[4]  20 C.F.R. § 404.1520a(c)(3).  If the adjudicator finds that the

2    claimant had no episodes of decompensation and only mild limitations (or none at all)

3    in the other functional areas, the adjudicator will "generally" conclude that the mental

4    impairment is not severe.  20 C.F.R. § 404.1520a(d)(1).

5                  *iii.*     *Analysis.*

6                       *a.*     *The Physicians' Opinions.*

7        Plaintiff contends that no physician who opined to plaintiff's mental limitations

8    found that plaintiff's depression was non severe.  (JS 4.)  In particular, Dr.

9    Malancharuvil opined plaintiff had "up to moderate" (*i.e.*, mild-to-moderate) limitations

10    in concentration, persistence, or pace, which would require a severity finding.  (*Id.*; *see*

11    20 C.F.R. § 404.1520a(d)(1).)  The Court disagrees.  As the ALJ noted (AR 21), Dr.

12    Malancharuvil opined that plaintiff's depression was "technically" non-severe.

13    Although Dr. Malancharuvil also testified that, viewed "liberally," plaintiff's depression

14    was severe, it was the ALJ's prerogative to resolve the conflict within his testimony.

15    *See Morgan v. Comm. of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (where

16    medical reports are inconclusive, "questions of credibility and resolution of conflicts in

17    the testimony are functions solely of the [Commissioner]").

18        Furthermore, Dr. Malancharuvil emphasized plaintiff's ability to function in a

19    work setting.  In addition, Dr. Malancharuvil opined that plaintiff was able to perform

20    moderately complex tasks, which suggests that plaintiff's concentration limitation was

21    more mild than moderate.  Therefore, it was reasonable for the ALJ to interpret Dr.

22    Malancharuvil's opinion as supporting a nonseverity finding.  *See* 20 C.F.R. §

23    404.1520a(d)(1).  As the ALJ's finding was reasonable, the Court is bound to uphold it.

24    *Gallant*, *supra*.

25

26

27       [4] Episodes of decompensation are exacerbations of or temporary increases in
symptoms or signs, accompanied by a loss of adaptive functioning.  20 C.F.R. Part

28    404, subpt. P, app. 1, § 12:00(C)(4).

1    Plaintiff further contends that the ALJ failed to provide legally-sufficient reasons
2    for rejecting the state agency physicians' opinions. (JS 5-6.) This argument lacks
3    merit. First, their opinions were of equal weight to Dr. Malancharuvil's. Accordingly,
4    the ALJ was not required to give specific, legitimate reasons for rejecting them. *Sheffer*
5    *v. Barnhart*, 45 F. App'x 644, 645 (9th Cir. 2002) (citing *Thomas v. Barnhart*, 278 F.3d
6    947, 954 (9th Cir. 2002)). Second, as the ALJ noted (AR 21), the record reflected that
7    plaintiff was able to maintain a variety of relationships. He dated, volunteered, and
8    maintained relationships with his children. This ground was sufficient for giving less
9    weight to the state agency physicians' finding that plaintiff was moderately limited in
10   social functioning. *See* 20 C.F.R. § 404.1527(d)(4) (the more consistent an opinion is
11   with the record as a whole, the more weight it will be given).

12   Plaintiff argues in addition that the ALJ erred in failing to give the greatest
13   weight to Dr. Berg's opinion as the examining physician. (JS 6-7.) The Court
14   disagrees. As the ALJ reasoned (AR 22), Dr. Berg's opinion was based largely on
15   plaintiff's subjective reports. As discussed below, the ALJ properly found that plaintiff
16   was less than credible with respect to his subjective symptoms. *Tommasetti v. Astrue*,
17   533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion
18   if it is based 'to a large extent' on a claimant's self-reports that have been properly
19   discounted as incredible").

20   Moreover, although Dr. Berg did conduct some objective testing on plaintiff, it
21   was limited to three tests in which plaintiff performed normally except for forgetting
22   one out of three items. It was reasonable for the ALJ to conclude (*see* AR 17) that Dr.
23   Berg's objective testing conflicted with his assessment of plaintiff's limitations, *e.g.*
24   plaintiff's alleged moderate or higher limitations in understanding and memory. In
25   turn, this was a valid reason to reject Dr. Berg's opinion. *See* 20 C.F.R. §
26   404.1527(c)(3) (the more relevant evidence a medical source provides to support an
27   opinion, the more weight it will be given). The ALJ also properly rejected Dr. Berg's
28   assertion that plaintiff would not be able to work, as the ultimate question of disability

9

1    is a determination reserved to the Commissioner.  20 C.F.R. § 404.1527(d)(1).  In sum,

2    the ALJ's assessment of the physicians' opinions does not warrant remand.

3                    b.      *The Severity Assessment.*

4        The Court finds that the substantial evidence supports the ALJ's determination,

5    via the psychiatric review technique, that plaintiff's depression was nonsevere.  (AR

6    17.)  As the ALJ asserted, plaintiff reported in a disability form that was able to take

7    care of his personal needs, albeit "at a slower rate."  (AR 140.)  He worked out

8    regularly, engaged in activities such biking, hiking, and reading (*see* AR 752, 951, 995),

9    and, when dating, was in frequent contact with his girlfriend.  Accordingly, the ALJ

10   reasonably determined that plaintiff had only mild limitations in ADLs.  Similarly, the

11   ALJ reasonably determined that plaintiff had only mild limitations in social functioning,

12   notwithstanding his angry outbursts.  *See* discussion, *supra*.

13       The Court further finds that the ALJ reasonably determined that plaintiff had only

14   mild limitations in concentration, persistence, or pace.  As discussed above, the

15   objective testing performed by Dr. Berg indicated that plaintiff had few limitations in

16   this area.  Finally, the record does not reveal inpatient psychiatric treatment or

17   otherwise indicate that plaintiff had episodes of decompensation.

18       Moreover, as the ALJ reasoned (AR 16), other factors suggested that plaintiff's

19   depression was nonsevere.  Plaintiff was consistently employed during his 15- to 20-

20   year history of depression.  (*See* AR 41-42.)  His depression responded well to a

21   combination of medications, and the record reflects that his downward moods followed,

22   rather than preceded, setbacks such as his termination.  Furthermore, plaintiff's

23   medication visits were relatively infrequent, and he spent only a few months in therapy.

24   (*See* AR 1012-13.)  Notwithstanding this limited treatment, less than a year after the

25   onset date plaintiff told treating sources that he was feeling much better, and his

26   psychiatrist evidently concluded that he was no longer depressed.  These factors support

27   the ALJ's conclusion that plaintiff's depression was temporary and situational or

28   reactionary.  (AR 16.)  The Court further notes that an impairment that lasts for fewer

1   than 12 continuous months or can be controlled by medication, cannot serve as the basis

2   of a disability finding.  20 C.F.R. § 404.1509.  Nor can an impairment that can

3   effectively be controlled by medication.  *Warre v. Commissioner of Soc. Sec. Admin.*,

4   439 F.3d 1001, 1006 (9th Cir. 2006).

5         Last but not least, plaintiff stated, in essence, that he was seeking disability

6   because he didn't want to work in his current field.  As the ALJ asserted (AR 16), this

7   statement suggests that plaintiff was seeking disability for "reasons unrelated to his

8   impairments."  (AR 16.)

9         For the foregoing reasons, remand on Issue One is not warranted.

10  2.   <u>Issue Two</u>.

11      A.   <u>Background</u>.

12          i.   *Plaintiff's Testimony.*

13        At the hearing, plaintiff testified that he last worked as a director of client

14  services for an advertising firm.  (AR 39, 41.)  He was fired because he was emotionally

15  unstable and his behavior was aggressive and abusive.  (AR 39-40.)  Plaintiff believed

16  that the combination of depression, ADD, anxiety, and back pain made him snap.  (AR

17  40.)  He had worked in the advertising industry for 35 years, holding 16 or 17 jobs total.

18  He had been fired from most of them, or quit abruptly, because of his emotional

19  instability.  (AR 41-42.)

20        Plaintiff testified that he had had back problems, including severe spinal stenosis,

21  for 12 years.  (AR 43, 44.)  He had had back surgery about eight years ago and his

22  doctor had recommended further surgery.  (AR 38-39.)  Plaintiff testified that even if he

23  were able to get his emotions and behavior under control, he would not be able to return

24  to his job because of his back pain.  (AR 40.)  The job required extensive travel in

25  which he would be stuck in a sitting position or carrying bags with creative material.

26  (AR 40.)  Plaintiff could only sit for about five minutes, but could walk as therapy for

27  his back.  (AR 39.)

28

Plaintiff further testified that over a 20-year period, he had tried a number of medications for his depression and ADD.  (AR 42.)  Any improvements from the medication were minor and temporary, and he would have to switch medications.  (AR 42.)  Effexor had worked for him, but had stopped working.  (AR 43-44.)  He had been in extensive rehabilitation since his back surgery.  The rehabilitation involved working out, stretching, and strengthening for two hours per day.  (AR 43.)  He had episodes in which he had to take morphine and other medications for his back, which would lead to his being hospitalized with hallucinations.  (AR 43.)

    ii. *The ALJ's Decision.*

In his decision, the ALJ found that plaintiff was not credible as to the severity of his back problems or his depression.  (*See* AR 19-22.)  Plaintiff contends that the ALJ failed to provide legally-sufficient reasons for finding plaintiff incredible.  (JS 14-17.)  The Court disagrees.

  B. <u>Discussion</u>.

    i. *Standard for Reviewing the ALJ's Credibility Determination.*

Once a claimant produces medical evidence of an underlying impairment that is reasonably likely to cause the alleged symptoms, medical findings are not required to support their alleged severity.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).  However, an ALJ may reject a claimant's allegations upon:  (1) finding evidence of malingering; or (2) providing clear and convincing reasons for so doing.  *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).  The ALJ's credibility determination is entitled to deference if his reasoning is supported by substantial evidence in the record and is "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony . . . ."  *Bunnell*, 947 F.2d at 345 (internal quotation marks omitted).

/ / /

/ / /

ii.     *Analysis.*

As a preliminary matter, the Court notes that plaintiff's statements regarding his career-related reasons for seeking disability constitute affirmative evidence of malingering.  *See Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010) (finding affirmative evidence of malingering where plaintiff admitted that he left his job because his employer was going out of business and reported that he wanted to do volunteer work but was afraid it would impact his disability benefits).  This evidence was sufficient to find plaintiff less than credible with respect to his claim as a whole.

Even if plaintiff's statements did not demonstrate malingering, the ALJ's decision would still stand.  First, contrary to plaintiff's assertion (JS 21), the ALJ provided ample grounds for finding him incredible as to his depression.  Plaintiff's treatment for his depression was infrequent and conservative in nature, consisting of medication and a brief stint of talk therapy.  Moreover, as the ALJ asserted (AR 16), plaintiff delayed in following his treating physician's recommendation that he obtain talk therapy, even after the medication change he cited as the reason for the delay.

Similarly, as the ALJ asserted (AR 19-20), plaintiff's treatment for his back pain consisted of pain medication, often requested by email.  (AR 287, 425-31, 587-88, 630, 643-33, 650, 655, 783.)  As the ALJ asserted (AR 20), plaintiff never sought treatment for a pain management specialist or chiropractor or otherwise sought more significant treatment.[5]  Although he was referred to physical therapy in September 2011 (AR 430), there are no records of his actually attending physical therapy.  In addition, plaintiff's apparent misuse of pain medication, leading to hallucinations, supports a finding of noncompliance with his physicians' orders.  Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment,

---

[5] Plaintiff contends, without citation to authority, that the ALJ should not have relied on plaintiff's failure to seek treatment without asking for an explanation.  (JS 16.)  The Court disagrees.  The claimant bears the burden of proving entitlement to disability benefits.  *Andrews v. Shalala*, 53 F.3d 1035, 1040 (9th Cir. 1995).

*Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007), as is an inadequately explained failure to seek treatment or follow a prescribed course of treatment, *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Second, where a plaintiff's daily activities are inconsistent with his claims of disabling symptoms, an ALJ may properly find the claimant less than credible. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). An ALJ may also, in general, discount a claimant's testimony where it is internally inconsistent or inconsistent with his other statements. *See Thomas*, 278 F.3d at 958-59. As discussed above, plaintiff's conduct, including his ADLs and social activities, was inconsistent with the claimed severity of his depression. And as noted, by the spring of 2012 he reported to treating sources that he was no longer depressed. As to his back, plaintiff reported exercising assiduously and being in great shape.[6] As the ALJ reasoned, plaintiff's "exercise tolerance" reasonably supported the determination that he could perform sedentary work. (AR 20.)

Fourth, as discussed above, the objective testing in the record did not support plaintiff's claimed limitations in concentration and memory. By the same token, the objective evidence undermined plaintiff's subjective claims regarding his back. An August 2011 MRI showed degenerative changes in the lumbar spine, including severe degenerative changes at L1-2 and L4-5 and foraminal stenosis at L4-5. (AR 291.) However, a physical examination in September 2011 revealed only mild right lumbar paravertebral tenderness. (AR 587-88.) A July 2012 physical examination revealed no tenderness, negative straight leg raising tests bilaterally, and full range of motion in plaintiff's extremities. (AR 1035.) Although the objective evidence could have been

---

[6] Notably, when he reported flares in back pain, they resulted from engaging in very physically-demanding activities, *i.e.* weightlifting and moving house. (AR 587, 740.) It is reasonable to assume that someone whose back pain was as severe as plaintiff claimed would not attempt to engage in such activity.

interpreted more favorably to plaintiff, it was not unreasonable for the ALJ to conclude that it supported finding that plaintiff could perform sedentary work.  (AR 20.)

Plaintiff argues, in essence, that he was terminated from his last job, and from numerous other jobs, because of "emotional instability" caused by depression.  (JS 15.) However, as discussed above, the ALJ reasonably determined that plaintiff had some degree of control over his interpersonal conduct.  In addition, there was substantial evidence that plaintiff's aggressive behavior was not inextricably linked to his depression.  As the ALJ asserted (AR 21), Dr. Malancharuvil explicitly testified that aggression was a behavior, not an illness, and plaintiff's aggression did not mean that he had a mental impairment.  The Court further notes that plaintiff reported benefitting from anger management classes and theorized that he had "learned his anger" from his father.  (AR 836, 885.)  This evidence supports the conclusion that his anger was a behavioral problem that could be addressed separately and apart from his depression.

In sum, the ALJ provided several legally-sufficient grounds for discounting plaintiff's subjective claims.  Accordingly, remand is not warranted.

**ORDER**

For the foregoing reasons, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

DATED: December 7, 2015

/S/ FREDERICK F. MUMM
FREDERICK F. MUMM
United States Magistrate Judge

15